# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

KENNETH JON GUERRERO,

    Plaintiff - Appellee,

v.

RJM ACQUISITIONS LLC,

    Defendant - Appellant.

No.  05-15121
D.C. No.  CV-03-00038-HG

**JUDGMENT**



Appeal from the United States District Court for the District of Hawaii (Honolulu).

This cause came on to be heard on the Transcript of the Record from the United States District Court for the District of Hawaii (Honolulu) and was duly submitted.

On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **REVERSED and REMANDED**.

Filed and entered 08/23/07



FILED

SEP 0 5 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

Form 10. Bill of Costs

## United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

<u>Note</u>: If you wish to file a bill of costs, it MUST be submitted on this form and filed, with
the clerk, with proof of service, within 14 days of the date of entry of judgment, and
in accordance with Circuit Rule 39-1. A late bill of costs must be accompanied by a
motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and Circuit
Rule 39-1 when preparing your bill of costs.

Kenneth J. Guerrero  v.  RJM Acquisitions, LLC          CA No. 05-15121

The Clerk is requested to tax the following costs against:  Appellee Kenneth J. Guerrero

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, Circuit Rule 39-1 | REQUESTED Each Column Must Be Completed | | | | ALLOWED To Be Completed by the Clerk | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs.* | Pages per Doc. | Cost per Page ** | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page | TOTAL COST |
| Excerpt of Record | 7 | 177 | .10 | 123.90 | | | | 123.90 |
| Appellant's Brief | 18 | 82 | .10 | 147.60 | | | | 147.60 |
| Appellee's Brief | --- | --- | --- | --- | | | | |
| Appellant's Reply Brief | 18 | 68 | .10 | 122.40 | | | | 122.40 |
| | | | TOTAL | $393.90 | | | TOTAL | $393.90 |

INTERNAL USE ONLY: Proceedings include all events.
05-15121 Guerrero, et al v. RJM Acquisitions LLC

KENNETH JON GUERRERO                John H. Paer, Esq.
     Plaintiff - Appellee           808/595-7179
                                    [COR LD NTC ret]
                                    41B Kepola Pl.
                                    Honolulu, HI 96817


     v.

RJM ACQUISITIONS LLC                Philip W. Miyoshi
     Defendant - Appellant          808/539-8700
                                    [COR LD NTC ret]
                                    MCCORRISTON MILLER MUKAI
                                    MACKINNON LLP
                                    Five Waterfront Plaza, Suite
                                    400
                                    500 Ala Moana Boulevard
                                    Honolulu, HI 96813

                                    David J. Minkin, Esq.
                                    FAX 808/524-8293
                                    808/529-7300
                                    4th Fl.
                                    [COR LD NTC ret]
                                    McCorriston Miller Mukai
                                    MacKinnon LLP
                                    Five Waterfront Plaza
                                    500 Ala Moana Blvd.
                                    Honolulu, HI 96813

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KENNETH JON GUERRERO,
*Plaintiff-Appellee,*

v.

RJM ACQUISITIONS LLC,
*Defendant-Appellant.*

No. 05-15121

D.C. No.
CV-03-00038-HG

OPINION

Appeal from the United States District Court
for the District of Hawaii
Helen Gillmor, District Judge, Presiding

Argued and Submitted
November 15, 2006—Honolulu, Hawaii

Filed August 23, 2007

Before: Stephen S. Trott, Kim McLane Wardlaw, and
William A. Fletcher, Circuit Judges.

Per Curiam Opinion;
Partial Concurrence and Partial Dissent by Judge W. Fletcher

## SUMMARY

### Business Law/Consumers

The court of appeals reversed a judgment of the district court and remanded. The court held that communications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.

10327

Appellee Kenneth Guerrero, a consumer, sued appellant RJM Acquisitions, LLC, a purchaser of consumer debt, in district court in Hawaii, alleging violations of the FDCPA. RJM had sent Guerrero two collection letters, one to his home address and one to his post office box, informing Guerrero that RJM had purchased a debt of about $1,300 that Guerrero originally owed to another creditor. The letters were identical except for the addresses and a one-letter difference in the file identifiers. In response, Guerrero's lawyer, John Paer, wrote RJM a letter asking for a payment from RJM of $3,000 within 10 days for settlement of RJM's alleged violations of the FDCPA in its debt collection efforts. Upon receipt of Paer's letter, RJM ceased direct collection activity from Guerrero and corresponded with Paer regarding the debt. In district court, RJM moved to dismiss Guerrero's first amended complaint, claiming that it did not relate back to his original complaint because it mentioned, for the first time, a specific letter RJM sent to Paer. The district court denied the motion. The court concluded that RJM violated the FDCPA and awarded Guerrero actual and statutory damages and attorneys' fees.

RJM appealed.

[1] An amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct set forth or attempted to be set forth in the original pleading. [2] While Guerrero's amended complaint added the specific facts involving the letter, and was more specific than the original in identifying provisions of the FDCPA, the claims it asserted arose out of the same conduct: RJM's attempt to collect a debt from Guerrero. [3] The district court concluded correctly that Guerrero's amended complaint related back to the original.

[4] Sections 1692d, 1692e, and 1692f of the FDCPA prohibit debt collectors from, respectively, using harassing or abusive collection methods, making false or misleading representations, and employing unfair practices. If the least sophis-

ticated debtor would likely be misled by a communication from a debt collector, the debt collector has violated the FDCPA. **[5]** Sending the two letters did not amount to a violation of the FDCPA, because even the least sophisticated debtor would understand that this collection effort was aimed at one, and not two, delinquent accounts. **[6]** RJM was attempting to collect on one account, as the identical balance amounts, original creditor identification, date of last payment, and virtually identical account and file numbers indicated. It had to be concluded that RJM did not violate § 1692g(a) under the "least sophisticated debtor" standard. The judgment of the district court had to be reversed on this issue.

**[7]** Section 1692g(b) of the FDCPA prohibits a debt collector from using false, deceptive, or misleading means to collect a debt. **[8]** The statute as a whole suggests a congressional understanding that, when it comes to debt collection matters, lawyers and their debtor clients will be treated differently. Section 1692c(d) defines "consumer" broadly to include a range of the debtor's relatives and fiduciaries. The conspicuous absence of the debtor's attorney from that otherwise extensive list suggested that in approaching the debt collection problem, Congress did not view attorneys as susceptible to the abuses that spurred the need for the legislation to begin with, and that Congress built that differentiation into the statute itself. **[9]** Section 1692g(b)'s repeated emphasis on the consumer, along with the FDCPA's clear distinction between consumer and attorney, compelled the conclusion that a collection effort must be aimed directly to the consumer himself to be prohibited by § 1692g(b). **[10]** It had to be held that communications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable under the FDCPA.

**[11]** Under § 1692g(b), when a debt is disputed, collection efforts must stop until the debt is verified. Once the debt is verified, collection efforts may continue. **[12]** The FDCPA does not require debt collectors to actually provide validation.

10330          GUERRERO v. RJM ACQUISITIONS

Rather, it requires that the debt collector cease all collection activity until it provides the requested validation to the debtor. [13] Once Paer notified RJM that Guerrero disputed the debt, RJM ceased all collection efforts directed at Guerrero, and instead responded as requested to Paer's demand letter. RJM was therefore under no obligation to verify the alleged debt at that time.

[14] When defending against a claim under the FDCPA, a debt collector may recover attorneys' fees and costs upon a district court's finding that the consumer brought the action in bad faith and for purposes of harassment. [15] Because the district court's conclusion that RJM violated the FDCPA was reversed, its award of attorneys' fees to Guerrero was in error and also had to be reversed.

Judge W. Fletcher concurred in part, and dissented in part, writing that the majority erred in concluding that § 1692e provides no protection against false, deceptive, or misleading representations to a debtor's attorney, and in concluding that indirect collection efforts aimed at a debtor's attorney are not covered by the prohibition against collection efforts pending verification of the disputed debt under § 1692g(b).

## COUNSEL

John Harris Paer, Honolulu, Hawaii, for the plaintiff-appellee.

David J. Minkin, McCorriston, Miller, Mukai, & MacKinnon, LLP, Honolulu, Hawaii, for the defendant-appellant.

Daniel P. Shapiro, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, Illinois, Amicus Curiae for the National Association of Retail Collection Attorneys and the Debt Buyers' Association, Inc.

## OPINION

PER CURIAM.

Kenneth Jon Guerrero, a consumer, sued RJM Acquisitions, LLC, a purchaser of consumer debt, in the United States District Court for the District of Hawaii, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* After extensive pretrial litigation, the district court issued two orders. The first denied RJM's motion to dismiss Guerrero's first amended complaint and ruled on the parties' cross summary judgment motions, concluding that RJM violated the Act and therefore Guerrero was entitled to actual and statutory damages and reasonable attorneys' fees. The second order adopted a special master's report recommending an award to Guerrero of over $45,000 in attorneys' fees. RJM appeals from these orders, claiming the district court incorrectly interpreted the Act. We have jurisdiction pursuant to 28 U.S.C. § 1291, and after carefully reviewing the district court's rulings, we reverse and remand.

### I

RJM claims the district court erroneously denied RJM's motion to dismiss, in which RJM asserted that Guerrero's first amended complaint did not relate back to the date he filed his original complaint, and therefore his action was barred by the Act's one-year statute of limitations. As for the rulings on the parties' summary judgment motions, RJM claims the district court incorrectly interpreted the Act's provisions and what they require of debt collectors. Specifically, RJM challenges the district court's conclusions that RJM violated the Act when it (1) sent Guerrero two collection letters containing slightly different account and file numbers, in an attempt to collect one debt, in violation of § 1692g(a); (2) continued collection efforts, in violation of § 1692g(b), after receiving notice that Guerrero disputed the debt and before providing verification of the debt; and (3) misrepresented to Guerrero's

counsel, in violation of § 1692e, that it was not a debt collection agency and not subject to the Act. In light of these allegedly erroneous conclusions, RJM argues, the district court's conclusion that RJM violated Hawaii consumer protection statutes is likewise incorrect. RJM claims also that Guerrero's complaint was brought in bad faith and to harass, and therefore the district court should have awarded RJM attorneys' fees. Finally, RJM challenges the district court's award of over $45,000 in attorneys' fees to Guerrero.

RJM and amici the National Association of Retail Collection Attorneys and the Debt Buyers' Association urge us to consider also whether communications that violate the Act when directed at a consumer do not violate the Act when directed at a consumer's legal counsel. RJM and amici argue for an affirmative answer to this question. RJM argued before the court, and amici argued in its brief, that the Act's purpose is to protect unsophisticated debtors from abusive debt collectors, and once a consumer obtains this protection by procuring legal counsel, the Act's protections become superfluous and therefore its provisions no longer apply. We agree. The Act's language and underlying purposes recognize a distinction between a consumer and a consumer's legal counsel. They are distinct legal entities. We therefore hold that the letter directed to the consumer's attorney after receiving notice that the consumer disputed an alleged debt does not violate the Act.

RJM and amici urge us also to correct the district court's conclusion that "even if [RJM] had ceased with its efforts to collect the alleged debt, [RJM] still would have been obligated to verify" it. We respectfully disagree with the district court, and hold that the Act requires a debt collector who receives notice that a consumer disputes an alleged debt to cease collection efforts *until* it provides the consumer with verification of the debt. The Act does not impose an independent obligation to verify a debt where the collector ceases all collection efforts directed at the consumer.

## II

In May of 2002, RJM sent Guerrero two "WE ARE YOUR NEW CREDITOR" collection letters, one to his home address and one to his post office box. Each letter informed Guerrero that RJM had purchased a debt Guerrero originally owed to Shell Oil Corp., each contained the same partially redacted social security number, and each indicated a balance of $1291.86. The letters were identical except that Guerrero's mailing address on each letter was different, and the last letter in both the "account" and "RJM file" identifiers, which appeared at the top and the bottom of each letter, were slightly different. The account and file numbers in the letter sent to Guerrero's post office box each consisted of a series of numbers followed by the letter "A". The account and file numbers in the letter sent to his street address were identical to those in the other letter in all respects but one — they ended with a "B".

In small print below the account information in each letter, the words "Please see reverse side for important information" appeared. On the reverse side of each letter appeared language the Act requires debt collectors to include in initial communications with consumers regarding collection of debts, informing Guerrero that if he disputed the debt in writing within thirty days of receiving the letter, RJM would obtain and provide Guerrero with verification of the debt or a copy of a judgment against him. As mandated by the Act, each letter concluded with the statement that "[t]his is an attempt to collect a debt."

Between May 20 and June 10, Guerrero contacted his lawyer, Mr. Paer, regarding RJM's debt collection effort. Electing to turn the tables on RJM, attorney Paer wrote RJM on June 10, asserting violations of the Act and related Hawaii state laws by RJM, and offering to settle Guerrero's claims arising from these alleged violations within ten days for a payment *from* RJM of $3,000.00. He threatened also to sue RJM in

federal court. The subject line of attorney Paer's letter went so far as to read: "Re: Guerrero v. RJM Acquisitions LLC." At this point in time, RJM had sent to Guerrero only the two letters dated May 20.

Attorney Paer, threatening to transform a simple debt collection matter into a federal case, wrote:

> Please be advised that this office represents Mr. Kenneth Jon Guerrero.
>
> It is his position that your letters of May 20, 2002, and its [sic] other collection attempts do not comply with the Fair Debt Collection Practices Act . . . . Mr. Guerrero will accept payment of $3000.00 covering both actual and statutory damages as well as attorneys fees in full settlement of his claims.
>
> This offer will remain open for ten days from today, after which, Mr. Guerrero expects to file his action in Federal District Court to obtain the sums due him. *Please respond* within that time if you are interested in resolving this matter without litigation.
>
> In addition, Mr. Guerrero hereby indicates formally that he disputes this alleged debt and requests that you send him verification of the debt . . . . Send verification and other communication *to this office* and *not* to Mr. Guerrero.

(emphasis added).

Attorney Paer's letter can only be described as a hardball tactic aimed either at resolving his client's debt at less than the amount RJM believed Guerrero owed, or at generating a lawsuit against RJM, or both. The letter had as one of its objectives the collection from RJM of alleged damages and attorneys' fees for violations of the Act for which attorney

Paer claimed RJM was clearly liable. In point of fact, all RJM had done was send a letter to the two addresses, provided by the debtor, seeking to collect a relatively small debt. As we shall explain, the letters did not violate the Act, and attorney Paer's claims to the contrary were baseless. In return, RJM received a short ten-day turnaround demand for more than double the amount of the debt, including attorneys' fees, and a threat of immediate federal litigation.

Upon receipt of attorney Paer's letter, RJM ceased all direct collection activity from Guerrero. As instructed by Guerrero's attorney, and in compliance with the Act,[1] RJM wrote attorney Paer on June 14, 2002, stating that it had acquired the Shell Oil account opened in the name of Kenneth Guerrero from Citibank, and providing Guerrero's complete social security number and the date of last payment. Enclosed with this letter was a copy of a June 11, 2002 letter from Citibank to Kenneth J. Guerrero. The letter reads,

> Dear Mr. Guerrero,
>
> The inquiry we received in reference to Associates/ Shell Oil account number 146240502 should be directed to:
>
> RJM Acquisitions, LLC
> 575 Underhill Blvd
> Suite 224
> Syosset, NY 11791
> 800-541-0824
>
> Citibank no longer owns this account. This account was sold to RJM in March, 2002. All communication concerning this account should be addressed to the new owner.

---

[1]*See* 15 U.S.C. § 1692c(a)(2) ("a debt collector may not communicate with a consumer . . . if the debt collector knows the consumer is represented by an attorney . . . .").

Sincerely,
[signed]
Portfolio Analyst

This letter responding to an inquiry presumably by Guererro was sent to him by Citibank at his address approximately one month after he received from RJM the May, 2002 letters attempting to collect this debt. The dates and sequences of the letters suggest an inquiry by Guerrero to Citibank upon receipt of RJM's May, 2002 letters. In the June 14, 2002 letter, RJM stated that it "was in the process of verifying the account."

We note that RJM's June 14, 2002 letter referenced both the account number from Shell Oil and its own file number without the As and Bs appearing in the two earlier letters to Guerrero. RJM asserted also in the letter its own (correct) legal position that it "respectfully maintains that it has violated no laws," and its (partially incorrect) position that it was "not a collection agency and therefore, not subject to the [Act]." RJM purchased the debt from Guerrero's original creditor. Therefore, RJM was not a "collection agency" employed by the creditor to collect the creditor's delinquent debts. Nevertheless, it does not follow that RJM was not subject to the Act. RJM further clarified that its only attempt to communicate directly with Mr. Guerrero was by letter before attorney Paer's intervention. RJM reiterated the current balance and requested attorney Paer to contact the office to discuss the matter.

Apparently taking every precaution to comply with the Act, RJM included in its letter, as it did in its earlier letters to Guerrero, the statement "This is an attempt to collect a debt. Any information obtained will be used for that purpose." This language is required by the Act in all initial communications with a consumer, see 15 U.S.C. § 1692e(11) — the failure to include it is a violation. While it is true that § 1692e(11) requires in *subsequent* communications only a statement that

the "communication is from a debt collector," we cannot conclude that RJM continued to collect a debt in violation of the Act merely because in attempting to comply with the Act it included in a letter to a debtor's counsel a statement the Act generally requires. Moreover, the word "this," in RJM's disclosure, without more, does not necessarily mean "this letter." "This" can also mean "this initiative," which began with the earlier letters to Guerrero. No further communications between RJM and Guerrero or RJM and attorney Paer occurred.

Six months later, in January of 2003, having yet to receive full verification of the alleged debt, Guerrero filed his complaint in the district court, alleging that RJM violated the Act and Hawaii consumer protection law. Later that year, RJM filed a motion for judgment on the pleadings, and Guerrero filed a motion for summary judgment. The protracted legal battle was on. In January of 2004, after extensive briefing on the motions and an unnecessarily antagonistic discovery process, the district court issued an order vacating the hearing date set for the motions and stating it would decide the motions without a hearing. In early February, the district court denied Guerrero's motion for summary judgment and granted RJM's motion for judgment on the pleadings, subject to a grant of leave to Guerrero to file an amended complaint. A little over a week later, Guerrero filed a first amended complaint, stating the same general allegations as the original complaint but alleging additional facts and identifying specific provisions of the Act.

In March of 2004, RJM filed its motion to dismiss Guerrero's first amended complaint, arguing *inter alia* that Guerrero's claims in the amended complaint did not relate back to his original complaint, and therefore his claims were barred by the Act's one-year statute of limitations. In mid-April, Guerrero filed another motion for summary judgment. Two weeks later RJM filed a cross motion for summary judgment. In the months following these filings, both parties briefed the

issues extensively. The amount of briefing throughout this case, coupled with a combative discovery process, resulted in what Judge Gillmor, at the hearing on the motions, referred to as an amount of lawyering disproportionate to the issues involved.

In July of 2004, the district court entered an order denying RJM's motion to dismiss and granting in part and denying in part the parties' summary judgment motions. Judgment was entered in December, awarding Guerrero $2,545.00 in actual and statutory damages plus reasonable attorneys' fees and costs. A week later, Guerrero filed a motion for award of attorneys' fees and a memorandum in support of the motion. RJM filed a memorandum opposing it. The district court referred the motion to a magistrate judge who, as special master, prepared a report on the motion for attorneys' fees, which the district court adopted in a June 2005 order awarding Guerrero $45,237.21 in attorneys' fees.

## III

Whether an amended pleading relates back to an original pleading is a question of law, and is therefore reviewed de novo. *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1127 (9th Cir. 2006) ("We . . . review de novo the district court's application of the Federal Rules of Civil Procedure, including Rule 15(c)'s relation back doctrine."). A district court's ruling on a motion to dismiss is reviewed de novo. *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004). We review de novo a district court's interpretation of the Act, and a district court's ruling on cross motions for summary judgment. *Romine v. Diversified Collection Serv., Inc.*, 155 F.3d 1142, 1145 (9th Cir. 1998); *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1074 (9th Cir. 2001). In the context of claims brought under the Act, we review a district court's denial of attorneys' fees to a debt collector under two standards of review. The district court's finding on the issue of bad faith and harassment is reviewed for clear error; the district court's

ultimate denial is reviewed for an abuse of discretion. *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1229 (9th Cir. 1989).

## A.

[1] An amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Fed. R. Civ. P. 15(c)(2). The district court concluded that the claims asserted in both of Guerrero's complaints arose out of the same underlying transaction; namely, RJM's attempt to collect a debt Guerrero allegedly owed.

RJM argues that the claims Guerrero raised in his first amended complaint did not arise from the same conduct, transaction, or occurrence set forth in the original complaint. To support this contention, RJM cites to *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1314 (9th Cir. 1982), which identified the basic inquiry in a relation back issue as "whether the opposing party has been put on notice about the claim or defense raised in the amended pleading." RJM argues that because the amended complaint mentioned specifically, for the first time, the June 14 letter RJM sent to counsel, the factual allegations in the original complaint provided "absolutely no notice of those claims raised for the first time" in the amended complaint.

[2] RJM's reliance on *Seaboard Corp.* is misplaced. Unlike Guerrero's amended complaint, the amended pleading in *Seaboard Corp.* added a new cause of action. 677 F.2d at 1314. It added, to a pleading alleging illegal market manipulation, a claim alleging illegal misrepresentation in a document. *Id.* Guerrero's original and first amended complaints alleged violations of the Act and Hawaii consumer protection law. While the amended complaint added the specific facts involving the June 14 letter, and was more specific than the original in iden-

tifying provisions of the Act, the claims it asserted arose out of the same conduct, transaction, or occurrence the district court identified; namely, RJM's attempt to collect a debt from Guerrero.

**[3]** RJM's argument is further undermined by the policy the rules governing amendments to pleadings is meant to effectuate. In *Hurn v. Retirement Fund Trust*, 648 F.2d 1252, 1254 (9th Cir. 1981), we noted "that the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F.R.Civ.P., by freely granting leave to amend when justice so requires." (internal quotes and citations omitted). Nothing in the record suggests the district court's decision to allow Guerrero to amend his complaint, and its conclusion that the amended complaint related back to the original, resulted in injustice to RJM. RJM's argument rests on an exaggerated interpretation of the rules of civil procedure and Ninth Circuit precedent. The district court concluded correctly that Guerrero's amended complaint related back to the original. We therefore proceed to evaluate the merits of the district court's rulings.

**B.**

**[4]** The district court agreed with Guerrero that RJM violated the Act when it sent two supposedly confusing letters to him in an attempt to collect one debt. The district court construed this claim as alleging violations of §§ 1692d, 1692e, and/or 1692f. These provisions of the Act prohibit debt collectors from, respectively, using harassing or abusive collection methods, making false or misleading representations, and employing unfair practices. The principle governing the Ninth Circuit's evaluation of claims under these provisions of the Act is set forth in *Swanson*: If the least sophisticated debtor would "likely be misled" by a communication from a debt collector, the debt collector has violated the Act. 869 F.2d at 1225. The district court observed that neither letter contained a statement indicating it was a copy of an original notice sent

to a separate address, and concluded a least sophisticated debtor likely would have been confused and would believe that he was being dunned for two distinct accounts. We respectfully disagree.

[5] As an initial matter, we note that RJM suggests incorrectly that the least sophisticated debtor standard's application is limited to claims arising under §§ 1692g and 1692e(5) of the Act. The Ninth Circuit has applied the standard to other sections as well. *See, e.g., Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (applying the standard to section 1692c); *see also Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1099-1100 (9th Cir. 1996) (applying the standard to sections 1692e(10) and 1692f). Nonetheless, we agree with RJM that sending the two letters does not amount to a violation of the Act, because even the least sophisticated debtor would understand that this collection effort was aimed at one, and not two, delinquent accounts.

[6] First and foremost, the letters were sent to the two addresses that Guerrero gave the original creditor. The same social security identifier appeared on each. Each letter indicated a balance identical to the other, each owed to the same original creditor, Shell Oil Corp. The account and file identifiers were identical, except for the designation "A" on the first letter, and "B" on the second. Each letter showed the same "Last Payment Date." We find untenable Guerrero's assertion that the letters were sufficiently confusing so as to mislead the least sophisticated debtor into believing RJM was attempting to collect on two accounts. RJM was attempting to collect on one account, as the identical balance amounts, original creditor identification, date of last payment, and virtually identical account and file numbers indicated. In addition, the June 11, 2002 letter from Citibank to Guerrero in response to the inquiry suggests that Guerrero recognized the delinquent account at issue. We conclude with no doubt that RJM did not violate § 1692g(a) under the "least sophisticated debtor" standard, and therefore reverse the district court on this issue.

## C.

[7] Section 1692g(b) of the Act requires a debt collector, who receives from a consumer written notice disputing a debt, to cease collection of the debt directly from the consumer until it has obtained either verification of the debt or a copy of a judgment and provided it to the consumer. Section 1692e prohibits a debt collector from using false, deceptive, or misleading means to collect a debt. The district court concluded that the June 14 letter RJM faxed to Guerrero's counsel was a prohibited collection effort in violation of both these provisions. We respectfully disagree, and hold that communications directed solely to a debtor's attorney are not actionable under the Act. Therefore, we hold that the responsive letter to counsel, and not to his client — "the consumer" — was not a prohibited collection effort and did not violate §§ 1692g(b) or 1692e.

A consumer and his attorney are not one and the same for purposes of the Act. They are legally distinct entities, and the Act consequently treats them as such. For example, a debt collector who knows that a consumer has retained counsel regarding the subject debt may contact counsel, but may not generally contact the consumer directly, unless the attorney gives his consent.[2] See 15 U.S.C. § 1692c(a)(2). Subject to certain exceptions, a debt collector may not communicate in connection with a debt with "any person other than *the consumer, his attorney*, a consumer reporting agency . . . , the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b) (emphasis added). And "consumer" is defined broadly in § 1692c to include "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C. § 1692c(d). Notably

---

[2]Similarly, when a debt collector knows that a consumer has retained counsel with regard to the subject debt, he may not generally contact anyone other than that attorney to determine the consumer's whereabouts. 15 U.S.C. § 1692b(6).

absent from this list of relatives and fiduciaries sharing in common the identity of "consumer" is a consumer's attorney.

[8] The statute as a whole thus suggests a congressional understanding that, when it comes to debt collection matters, lawyers and their debtor clients will be treated differently. *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.") (quoting *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122 (1850)). Specifically, it appears that Congress viewed attorneys as intermediaries able to bear the brunt of overreaching debt collection practices from which debtors and their loved ones should be protected. Section 1692c, for instance, covers "[c]ommunications in connection with debt collection." In regulating the ability of debt collectors to commence such communications, the Act is plainly concerned with harassment, deception, and other abuse.[3] Accordingly, Congress sought to protect not just debtors themselves from illegal communications, but also others who would be vulnerable to the more sinister practices employed in the debt collection industry. Section 1692c(d), as explained above, thus defines "consumer" broadly to include a range of the debtor's relatives and fiduciaries. The conspicuous absence of the debtor's attorney from that otherwise extensive list is telling. It suggests that in approaching the debt collection problem, Congress did not view attorneys as susceptible to the abuses that spurred the need for the legislation to begin with, and that Congress built that differentiation into the statute itself. *See Zaborac v. Phillips & Cohen Assocs.*, Ltd., 330 F. Supp. 2d 962, 967 (N.D. Ill. 2004).

Analyzing § 1692c(a)(2) leads to the same conclusion.

---

[3]The Act notes the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

Under that provision, a debt collector who knows how to contact a debtor's attorney must target all communications to the attorney, and not to the debtor himself. The rationale behind this rule is clear. Unsophisticated consumers are easily bullied and misled. Trained attorneys are not.

**[9]** Turning to the provisions at issue here, the plain language sheds pale light at best on the question of whether RJM's June 14, 2002 letter, targeted solely at a debtor's attorney, is actionable. Section 1692g(b) reads in relevant part:

> Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

RJM is charged with violating the command that it "cease collection of the debt" when it mailed its June 14 letter to Attorney Paer before verifying the debt. Thus, the crucial question is whether "collection of the debt" can include efforts directed exclusively to a debtor's attorney, but not at the debtor himself. Section 1692g(b)'s repeated emphasis on the "consumer," along with the Act's clear distinction between consumer and attorney, compel the conclusion that a collection effort must be aimed directly to the consumer himself to be prohibited by § 1692g(b).

**[10]** Section 1692e prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." We do not dis-

agree with the dissent that such prohibited representations or means may take the form of a communication. But we hold that communications directed only to a debtor's attorney,[4] and unaccompanied by any threat to contact the debtor, are not actionable under the Act.

### D.

All but one published federal decision to have given reasoned consideration to the question has determined that communications to a debtor's attorney are not actionable under the Act. *See, e.g., Kropelnicki v. Siegel*, 290 F.3d 118, 127-28 (2d Cir. 2002); *Diesi v. Shapiro*, 330 F. Supp. 2d 1002, 1004 (C.D. Ill. 2004); *Zaborac*, 330 F. Supp. 2d at 966-67; *Tromba v. M.R.S. Assocs., Inc.*, 323 F. Supp. 2d 424, 428 (E.D.N.Y. 2004); *but see Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232-33 (4th Cir. 2007). At least six unpublished district court opinions have come to the same conclusion.[5]

In *Kropelnicki*, debt collectors had allegedly made misleading statements to a debtor's attorney about when, if ever, they might file suit in state court to collect on the debt. 290 F.3d at 127. Plaintiffs argued that these misleading statements violated 15 U.S.C. § 1692e, a provision also at issue here. *Id.* The Second Circuit ultimately dismissed the action for lack of subject matter jurisdiction, *id.* at 129, but the panel first addressed the underlying merits of the plaintiff's claim.

---

[4]Our holding applies where the debtor is represented by an attorney and the communication is directed only to that attorney. A debt collector is not insulated from liability under the Act merely because a debtor also happens to be an attorney.

[5]*See, e.g., Captain v. ARS Nat'l Servs. of N. Am.*, 2006 U.S. Dist. LEXIS 47796, at *9 (S.D. Ind. 2006); *Lauer v. Mason, Silver, Wenk & Mishkin, LLC*, 2006 U.S. Dist. LEXIS 20080, at *6 (N.D. Ill. 2006); *Hill v. Mutual Hospital Service, Inc.*, 2005 U.S. Dist. LEXIS 34507, at *4 (S.D. Ind. 2005); *Young v. Manley*, 2000 U.S. Dist. LEXIS 13035, at *3 (N.D. Ill. 2000); *Phillips v. N. Am. Capital Corp.*, 1999 U.S. Dist. LEXIS 7000, at *7 (N.D. Ill. 1999); *Ringer v. Credit Bureau, Inc.*, 1983 U.S. Dist. LEXIS 20346, at *3-*4 (D. Ore. 1983).

The court expressed its "grave reservations about concluding that this sort of claim is actionable under the FDCPA . . . . [A]lleged misrepresentations to *attorneys* for putative debtors cannot constitute violations of the FDCPA." *Id.* at 127 (emphasis in original). Noting the Act's underlying policy of "protect[ing] consumers from deceptive or harassing actions taken by debt collectors," the panel came to the sensible conclusion that when "an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Id.* at 127-28.

Several other federal courts have confronted the issue squarely and have reached the same conclusion. In *Zaborac*, for example, a consumer disputed a debt and requested verification, and the debt collector responded by "plac[ing] an immediate hold" on all collection efforts pending verification of the debt. 330 F. Supp. 2d at 965. Counsel for the consumer then contacted the debt collector to alert it that the consumer might file for bankruptcy, at which point the consumer's counsel and the debt collector attempted to negotiate a settlement. *Id.* The consumer filed suit, alleging that the settlement negotiations with his attorney before verification violated § 1692g(b). *Id.* at 966.

In a persuasive opinion, the district court held that statements made to a debtor's attorney are not actionable under § 1692g(b). *Id.* ("While the statute commands a debt collector to cease demanding payment from the consumer until a requested validation is obtained, its language is certainly not expansive enough to create a ban on all communications between a consumer's *lawyer* and a debt collector.") (emphasis in original). The court noted that § 1692g(b) "speak[s] solely of the consumer and the debt collector," *id.*, while other provisions in the Act explicitly single out a consumer's attorney, *id.* at 967. And, like the Second Circuit in *Kropelnicki*, the *Zaborac* court focused on the underlying purposes served

by the Act, finding they would be ill-served by applying the Act's strictures to communications with a debtor's counsel. *Id.* at 966-67.[6]

The dissent cites two types of cases for support: cases that do not actually analyze the issue we must now decide, and cases that erroneously rely on those cases for their implicit assumptions. In *Heintz v. Jenkins*, the Supreme Court was concerned with a single question: "The issue before us is whether the term 'debt collector' in the [Act] applies to a lawyer who regularly, through litigation, tries to collect consumer debts." 514 U.S. 291, 292 (1995) (internal quotation marks and emphasis omitted). The offending communication in that case happened to be sent to a debtor's counsel, *id.* at 293, but the question on review was the entirely different matter of whether a law firm engaged in collecting a debt is a debt collector for purposes of the Act. The identity of the *recipient* was mentioned in passing; neither the Court nor the parties[7] addressed the issue now before us. We are not required to follow what amounts to, at most, an implicit assumption, because "[s]uch unstated assumptions on non-litigated issues are not precedential holdings binding future decisions." *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985); *see also Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993) (holding that stare decisis is not applicable

---

[6]The dissent's claim that *Zaborac*'s reasoning is limited to § 1692g(b), and irrelevant to § 1692e, is off the mark. The relevant portion of *Zaborac* arose under § 1692g(b), but its reasoning is broader than that, reaching to the Act as a whole. Indeed, the court cited favorably to *Kropelnicki*, which arose under § 1692e, for the proposition that a consumer's attorney serves as "an intermediary between the debt collector and the consumer." 330 F. Supp. 2d at 967 n.5; *see also Tromba*, 323 F. Supp. 2d at 427-28 (dismissing claim brought under § 1692e because communications to a debtor's attorney are not actionable under the Act).

[7]Heintz's Petition for Certiorari sought review of only one question: "Is an attorney engaged solely to prosecute litigation against a consumer a 'debt collector' within the meaning of the [Act]?" Petition for Writ of Certiorari, *Heintz*, 514 U.S. 291 (No. 94-367).

unless the issue was "squarely addressed" in a prior decision); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Captain*, 2006 U.S. Dist. LEXIS 47796, at *10 ("The issue presented here did not arise [in *Heintz*]. Neither [the Supreme Court nor the Seventh Circuit's *Heintz*] opinion should be treated as binding authority on an issue that did not arise and was not addressed.").[8]

The dissent also relies upon *Sayyed*, which held that communications sent to a debtor's attorney are covered by the Act. 485 F.3d at 232-33. But the Fourth Circuit's decision in *Sayyed*, which did not even acknowledge the great weight of authority holding to the contrary, relied on the implicit assumption by the Supreme Court in *Heintz*, which we find inappropriate for the reasons just discussed.

Moreover, *Sayyed* found support for its position in § 1692c(a)(2), which, with limited exceptions, requires a debt collector who knows that a debtor is represented by an attorney to communicate only with that attorney. That provision cuts in the opposite direction, however, because it demonstrates that the Act contemplates different roles for, and different treatment of, attorneys and their debtor clients. Section 1692c(a)(2) actually reinforces our view that Congress treated attorneys as intermediaries between debtors and debt collectors, and that a debtor's attorney does not require the same protections as a debtor himself.

---

[8]Similarly, in *Dikeman v. National Educators, Inc.*, another case the dissent relies upon, the Tenth Circuit bypassed the threshold question of whether communications sent only to a debtor's attorney are actionable and jumped instead to consider what an attorney might find misleading. 81 F.3d 949, 953-54 (10th Cir. 1996).

## E.

The purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices. *See* S. Rep. 95-389, at 2, 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695; *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) ("[T]he FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous.") (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993)).

The Act's purposes are not served by applying its strictures to communications sent only to a debtor's attorney, particularly in the context of settlement negotiations. Congress was concerned with disruptive, threatening, and dishonest tactics. The Senate Report accompanying the Act cites practices such as "threats of violence, telephone calls at unreasonable hours [and] misrepresentation of a consumer's legal rights." S. Rep. 95-389, at 2. In other words, Congress seems to have contemplated the type of actions that would intimidate unsophisticated individuals and which, in the words of the Seventh Circuit, "would likely disrupt a debtor's life." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000).

When an individual is represented by counsel who fields all communications relevant to the debt collection, these concerns quickly evaporate. Attorneys possess exactly the degree of sophistication and legal wherewithal that individual debtors do not. *See Kropelnicki*, 290 F.3d at 127-28 (when "an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior.").

The dissent overstates the scope of our holding, asserting, for example, that we hold that "a debtor is protected against

false, deceptive, or misleading representations only so long as she does not retain an attorney." Diss. Op. at 10362. But under our rule, the Act applies to conduct aimed at a debtor himself regardless of whether he has retained counsel. We merely hold that when the debt collector ceases contact with the debtor, and instead communicates exclusively with an attorney hired to represent the debtor in the matter, the Act's strictures no longer apply to those communications.

## F.

While no purpose of the Act is furthered by the unwarranted extension of its prohibitions to communications targeted exclusively at a debtor's attorney, the facts of this case illustrate well how a contrary rule would actively frustrate some of these objectives.

One purpose of the Act is to avoid "forc[ing] honest debt collectors seeking a peaceful resolution of the debt to file suit in order to resolve the debt — something that is clearly at odds with the language and purpose of the FDCPA." *Clark*, 460 F.3d at 1170 (quoting *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 399 (6th Cir. 1998)). Congress in passing the Act sought to *encourage* the prompt and amicable settlement of debts. There is also, of course, the "strong judicial policy that favors settlements" of disputes in general. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).[9]

Here, Attorney Paer sent RJM an incendiary letter alleging violations of the Act and offering to settle RJM's alleged violations for a lump-sum payment of $3,000 to Guerrero. The letter further stated: "*Please respond* within [ten days] if you are interested in resolving this matter without litigation. . . .

---

[9]We do not, contrary to the dissent, hold that policy arguments favoring settlement trump the provisions of the Act. Rather, we look to the Act's purposes and objectives because the statutory text and structure do not offer a clear answer.

Send verification *and other communication* to this office and not to Mr. Guerrero." (emphasis added). Only at that point did RJM contact Attorney Paer *as requested*, restating the amount allegedly owed by Guerrero. Moreover, RJM enclosed a copy of a letter from Citibank verifying the existence of the debt and its sale to RJM. Then, instead of working toward resolving a rather small debt, counsel succeeded in morphing it into a federal battle royale complete with attorneys' fees far in excess of the amount in controversy.

We can think of no better way to frustrate settlement attempts than to adopt the rule urged by Guerrero, which here would penalize a person attempting to pursue an outstanding debt who did little more than respond to a threat by a debtor's attorney to file a lawsuit for violations and damages. This is a perverse result that Congress could never have intended, and its only effect can be to make debt collectors in this circuit extremely reluctant to respond to *any* settlement negotiations or offers made by attorneys on behalf of their clients, or, for that matter, to extend unilaterally an offer of settlement to a debtor's attorney.

## G.

Because we hold that the district court erred in concluding that RJM continued collection efforts in violation of the Act, we must address the district court's conclusion that even if RJM had ceased collection efforts, the Act nevertheless required it to verify the alleged debt.

[11] The relevant provision of the Act, section 1692g(b), states, "If the consumer notifies the collector in writing within the thirty-day period . . . that the debt . . . is disputed . . . the debt collector shall cease collection of the debt . . . *until* the debt collector obtains verification of the debt or a copy of a judgment[.]" (emphasis added). On this subject, the plain language of the statute is clear. When a debt is disputed, collection efforts must stop until the debt is verified. Once the debt

is verified, collection efforts may continue. Nothing in the provision suggests an independent obligation to verify a disputed debt where the collector abandons all collection activity with respect to the consumer.

[12] We agree with the Seventh Circuit's interpretation of this provision in *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480 (7th Cir. 1997). In *Jang*, consumer plaintiffs claimed that defendants, two debt collection agencies, violated the Act because they never verified the alleged debts after plaintiffs disputed them. *Id.* at 482. The Seventh Circuit, affirming the district court's grant of defendants' motion to dismiss, noted correctly that the Act "does not require debt collectors to actually provide validation. Rather, it requires that the debt collector cease all collection activity until it provides the requested validation to the debtor." *Id.*

A collector, notified that a debt is disputed, thus has a choice. As the Court in *Jang* put it, the collector "may provide the requested validations and continue their [sic] debt collection activities, or [it] may cease all collection activities." *Id.* at 483 (citing *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992). It would make little sense to impose an independent obligation to verify an alleged debt on a collector who, for example, decides a disputed debt is not worth the effort and chooses to close or sell the account. Or, as the court in *Jang* noted, on a collector who, upon receiving a dispute notice, realizes the consumer does not in fact owe the debt and so abandons all costly collection efforts.

[13] Here, once attorney Paer notified RJM that Guerrero disputed the debt, RJM ceased all collection efforts directed at Guerrero, and instead responded as requested to Paer's demand letter. RJM was therefore under no obligation to verify the alleged debt at that time.

## H.

[14] When defending against a claim under the Act, a debt collector may recover attorneys' fees and costs upon a district

court's finding that the consumer brought the action in bad faith and for purposes of harassment. *See* 15 U.S.C. § 1692k(a)(3). We are inclined to find Guerrero's counsel's aggressive use of the Act unworthy of commendation, and are skeptical of his claim that even he, an experienced consumer protection attorney, found the two letters confusing and misleading. Nevertheless, Guerrero's argument that the letters would mislead the least sophisticated debtor is minimally colorable. RJM offers no evidence, other than its conclusory assertion that Guerrero's claims were frivolous, to support a finding that Guerrero's claims were necessarily brought in bad faith and with the purpose of harassing RJM. In view of a lack of Ninth Circuit authority on these issues, the district court did not clearly err in finding Guerrero brought his suit in good faith, and did not abuse its discretion in denying RJM attorneys' fees.

[15] However, because we reverse the district court's conclusion that RJM violated the Act, we hold that its award of attorneys' fees to Guerrero was in error.

## IV

The Act was meant to shield debtors from abusive collection practices, but it was never intended to shift the balance of power between debtors and creditors such that a debt collector cannot work with a debtor's attorney to settle claims without exposing itself to liability out of proportion to the debt allegedly owed. Nor was it intended as a sword to be brandished by debtors who have retained counsel — the very debtors least in need of the Act's protections. RJM Acquisitions did not violate the Act in its June 14 letter to Paer, or in its original letters to Guerrero. Consequently, we REVERSE and REMAND with instructions to vacate the award of attorneys' fees to Guerrero and to enter judgment on both Counts I and II[10] in favor of RJM Acquisitions.[11]

---

[10] The merits of Count II, alleging violations of HRS § 480-2, depend on our resolution of the merits of Count I, counsel for each party having stipulated to the element of damages sustained as required by HRS § 480-2.

[11] Guerrero's request for attorneys' fees on appeal is denied.

W. FLETCHER, concurring in part, dissenting in part:

I agree with much of the majority's opinion. However, I disagree with its conclusion that a communication between a debt collector and a debtor's attorney is not actionable as a "false, deceptive, or misleading representation" under the Fair Debt Collection Practices Act ("FDCPA" or "Act"). 15 U.S.C. § 1692e. I also disagree with its conclusion that the letter sent by the debt collector in this case, RJM Acquisitions LLC ("RJM"), to the debtor's attorney was not an attempt to collect a debt. *See id.* § 1692g(b). The majority's conclusions are inconsistent with the plain language of the statute, with appellate case law interpreting that language, and with the policy of the statute.

I.   Factual Background

The factual background of this case is recounted in some detail in the majority opinion. For purposes of this dissent, only the following need be stated.

On May 20, 2002, RJM sent two nearly identical letters to Kenneth Guerrero, at two separate addresses in Hawaii, attempting to collect an asserted debt of $1,291.86. Guerrero then contacted an attorney, who wrote a letter to RJM on June 10, 2002. The attorney's letter requested payment of $3,000 to Guerrero, threatened litigation if that amount were not paid within ten days, and requested verification of the debt. The letter requested that RJM send the verification and other communications to the attorney rather than to Guerrero.

RJM responded in a letter to Guerrero's attorney on June 14, 2002. In its entirety, the body of RJM's letter stated:

RJM Acquisitions LLC is in receipt of a recent fax you sent dated June 10, 2002, concerning the above referenced account. Please be advised that RJM

Acquisitions LLC has purchased this account from Citibank (SD), N.A.

In response to your fax, please be guided by the following. A Shell Oil account was opened August 12, 1993, in the name of Kenneth J. Guerrero, social security # XXX-XX-XXXX. The last payment was posted October 2, 1998.

We are in the process of complying with your request to verify the above referenced account. Same will be sent to you upon receipt.

RJM Acquisitions LLC respectfully maintains that it has violated no laws. RJM Acquisitions LLC is not a collection agency and therefore, not subject to the Fair Debt Collection Practices Act. The only attempted contact we had with your client is by our letter dated May 18, 2002 [sic].

Additionally, enclosed please find relevant information in response to your fax.

The current balance is $1,291.86. Please contact this office to discuss this matter.

We have enclosed a **postage paid return envelope** for your convenience.

(Emphasis in original.) At the bottom of its letter, below the signature line and in the same typeface as the body of the letter itself, RJM wrote, "This is an attempt to collect a debt. Any information obtained will be used for that purpose."

No other communications are at issue.

## II. My Disagreements with the Majority

Congress passed the FDCPA in 1978 to respond to the "widespread and serious national problem" of "debt collection

abuse." S. Rep. No. 95-382, at 2, 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, 1698. Congress intended that the FDCPA serve as a "remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006).

According to the majority, whenever a debtor is represented by an attorney none of the protections of the FDCPA protect the debtor against false, misleading, or abusive communications by the debt collector, so long as the communications are directed to the attorney. The majority's conclusion is inconsistent with the purpose of the FDCPA. More to the point, its conclusion is inconsistent with the plain statutory text.

The FDCPA is a multi-part statute, with a number of provisions regulating what a debt collector may do. Two provisions specifically mention attorneys for debtors, specifying that if a debtor retains an attorney a debt collector must communicate with the attorney rather than the debtor except in narrowly defined circumstances. 15 U.S.C. §§ 1692b(6), 1692c(a)(2). Other provisions prohibit harassment or abuse, § 1692d; prohibit "any false, deceptive, or misleading representation," § 1692e; prohibit "unfair or unconscionable means" of collecting debts, § 1692f; require that the debt collector "cease collection of [a disputed] debt" during a requested verification of the debt, § 1692g(b); require that any suit be brought in specified venues, § 1692i; and prohibit the use of deceptive forms, § 1692j.

Given these provisions, it is impossible to conclude that all otherwise prohibited conduct is permitted merely because it is directed at a debtor's attorney. For example, § 1692d(1) prohibits "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person." Further, § 1692i(a) requires that a legal action to

enforce a debt be brought in the district in which the consumer resides or signed the contract sued upon or, in the case of a secured interest in real property, in the district in which the property is located. It simply cannot be the case that such things as threats of violence communicated through a debtor's attorney and suits in inconvenient forums are no longer forbidden by the FDCPA as soon as the debtor retains an attorney.

There are two provisions of the FDCPA at issue in this case — § 1692e, which forbids "any false, deceptive, or misleading representation," and § 1692g(b), which requires cessation of "collection of the debt" during verification of a disputed debt. Even though the majority rejects Guerrero's claims under both sections, its analysis is based almost exclusively on § 1692g(b) and on one district court case interpreting that section. In my view, the majority errs in concluding that § 1692e provides no protection against false, deceptive, or misleading representations to a debtor's attorney. Indeed, I think the majority would almost certainly abandon its conclusion that § 1692e provides no such protection if it were to analyze § 1692e on that section's own terms. In my view, the majority also errs in concluding that indirect collection efforts aimed at a debtor's attorney are not covered by the prohibition against collection efforts pending verification of the disputed debt under § 1692g(b). I discuss §§ 1692e and 1692g(b) in turn.

A.   "False, Deceptive, or Misleading" Statements under § 1692e

1.   Coverage of § 1692e

For three reasons, I conclude that communications between a debt collector and an attorney representing a debtor are covered by § 1692e.

First, the text of the FDCPA clearly requires that conclusion. Section 1692e provides, "A debt collector may not use

any false, deceptive, or misleading representation or means in connection with the collection of any debt." For purposes of the FDCPA, a "debt collector" is "any person who . . . regularly collects or attempts to collect, *directly or indirectly*, debts owed or due or asserted to be owed or due." 15 U.S.C. § 1692a(6) (emphasis added). A "representation" may be made by means of a "communication." *See, e.g., id.* § 1692e(8) (prohibiting "[c]ommunicating or threatening to communicate to any person credit information which is known . . . to be false"); *id.* § 1692e(9) (prohibiting "use or distribution of any written communication which simulates or is falsely represented to be [an official] document"); *id.* § 1692e(11) (prohibiting "failure to disclose in the initial . . . communication with the consumer . . . that the debt collector is attempting to collect a debt"). A "communication" is defined as the "conveying of information regarding a debt *directly or indirectly to any person* through any medium." *Id.* § 1692a(2) (emphasis added).

These provisions make clear that the prohibition contained in § 1692e against "any false, deceptive, or misleading representation . . . in connection with the collection of any debt" is not limited to representations made directly to debtors. By its plain terms, § 1692e bars "any false, deceptive, or misleading representation," whether it is made to the consumer or to a third party, so long as the representation is made "in connection with the collection of a debt." The majority's assertion that "communications directed only to a debtor's attorney . . . are not actionable under the Act," Maj. Op. at 10345, is impossible to square with the Act's prohibition on such representations when made "directly or indirectly to any person through any medium."

There is nothing in the text of the FDCPA to indicate that attorneys representing debtors are excluded from the class of third parties to whom a debt collector may not make a false, deceptive, or misleading representation. To the contrary, § 1692c(a) specifically provides that, where a debtor is repre-

sented by an attorney, the debt collector shall direct all "communication" to the attorney, absent permission to communicate directly with the debtor. A proper reading of the text therefore dictates that § 1692e, which regulates categorically the contents of communications by the debt collector, covers the "communication" to the debtor's attorney described in § 1692c(a)(2). *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995) ("[T]he normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning.") (internal quotation marks and citation omitted).

Second, the United States Supreme Court and two courts of appeals have read § 1692e as applying to communications to attorneys representing debtors. In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the debtor, Darlene Jenkins, borrowed money from a bank and then defaulted on the loan. The bank sued Jenkins in state court to recover the debt. As part of an effort to settle the suit, an attorney for the bank wrote a letter to Jenkins's attorney. Jenkins then brought suit against the bank's attorney and his law firm, alleging that the letter to her attorney was a " 'false representation of . . . the . . . amount . . . of any debt' " in violation of § 1692e(2)(A). *Heintz*, 514 U.S. at 293 (quoting 15 U.S.C. § 1692e(2)(A)) (alterations in original). The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, on the ground that the FDCPA did not apply to a lawyer who attempts to collect a debt through litigation. *Id.* at 294. The Supreme Court unanimously affirmed the Seventh Circuit's reversal of the district court order granting the motion to dismiss, holding that "[t]he Act does apply to lawyers engaged in litigation." *Id.* In so doing, the Court assumed, quite correctly in my view, that a false representation sent to a debtor's attorney by a debt collector violates § 1692e(2)(A).

Further, in *Dikeman v. National Educators, Inc.*, 81 F.3d 949 (10th Cir. 1996), an employee of a debt collector communicated with an attorney representing two debtors in an

attempt to collect overdue rent and other charges. *Id.* at 950. The debtors sued the debt collector and several of its employees under the FDCPA, claiming that the communication was a " 'false or misleading misrepresentation' " in violation of § 1692e(11). *Id.* at 951. The Tenth Circuit affirmed a jury verdict in favor of the defendants, but not on the ground that a communication to a debtor's attorney is not covered by § 1692e. Rather, the court affirmed on the ground that the communication was not false or misleading because the attorney, as a sophisticated professional, would not have misunderstood it. *Id.* at 953-54.

Finally, in *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007), the law firm of Wolpoff & Abramson ("W&A") sued Farid Sayyed in state court to collect a debt. *Id.* at 228. Sayyed, in turn, sued W&A for violation of the FDCPA, alleging, inter alia, that W&A violated § 1692e(2)(A) by falsely stating the amount of the debt. *Id.* at 229. W&A argued that § 1692e does not apply to communications to a debtor's attorney. *Id.* at 232. The Fourth Circuit squarely rejected that argument. Noting that the FDCPA both contemplates communications with debtors' attorneys and defines "communication" expansively, the court concluded that a false statement to a debtor's attorney "plainly qualifies as an indirect communication to the debtor." *Id.* at 232-33. It then wrote, "If the statute left any room for doubt about this issue, *Heintz* resolved it. *Heintz* itself involved a communication from a debt collection attorney to debtor Darlene Jenkins' counsel, not to Jenkins herself. . . . Thus, plainly, the FDCPA covers communications to a debtor's attorney." *Id.* at 233.

The majority brushes these cases aside, relying instead on dictum from one court of appeals case and on several district court cases. The appellate case is *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002), in which the Second Circuit declined to entertain an FDCPA claim based on the *Rooker-Feldman* doctrine. The court noted in dictum, without citation to either *Heintz* or *Dikeman*, "Where an attorney is interposed as an

intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior. However, this is not an issue on which we need to rule today." *Id.* at 128.

The only district court opinion discussed (as opposed to string-cited) by the majority is *Zaborac v. Phillips & Cohen Assocs., Ltd.*, 330 F. Supp. 2d 962 (N.D. Ill. 2004). But the issue in *Zaborac* was not whether communications from a debt collector to a debtor's attorney were covered by the "false, deceptive, and misleading representation" provision of § 1692e. Rather, the issue was whether settlement negotiations between the attorneys for the two sides while a debt was being verified constituted "collection of the debt" within the meaning of § 1692g(b). *Id.* at 966. The district court in *Zaborac* held that the settlement negotiations in that case did not constitute "collection" under § 1692g(b) and were thus permitted while verification of the debt was still pending. *Id.* at 966-67. But *Zaborac*'s holding on the meaning of "collection" under § 1692g(b) does not resolve the question whether a debt collector is forbidden by § 1692e to make a "false, deceptive, or misleading representation" to a debtor's attorney.

Third, if notwithstanding § 1692e debt collectors are free to make false, deceptive, or misleading representations to debtors' attorneys, debtors are left vulnerable to the very abuses that the FDCPA was intended to redress. For example, assume that a debt collector sends to a debtor's attorney false documents purporting to verify a debt. In such a case, the attorney might discover the truth and protect the debtor, but she might not. Even if the attorney does discover the truth, she will likely have spent time and money doing so. If § 1692e does not forbid sending false documents to the debtor's attorney, the debtor will have to pay the attorney's fees and expenses out of his or her own pocket. On the other hand, if § 1692e forbids such communications with the debtor's

10362    GUERRERO v. RJM ACQUISITIONS

attorney, the debtor will be able to recover damages and attorney's fees. *See* 15 U.S.C. § 1692k(a)(1), (3).

Under the majority's reading of § 1692e, a debtor is protected against false, deceptive, or misleading representations only so long as she does not retain an attorney. As soon as an attorney for the debtor enters the picture, the debt collector is free to send false, deceptive, and misleading communications to the debtor's attorney without fear of any damage judgment or award of attorney's fees. That is, as soon as the attorney enters the picture, the debtor rather than the debt collector will have to bear the burden imposed by any such false, deceptive, or misleading communications from the debt collector. Such a result is manifestly contrary both to common sense and to the policy underlying the FDCPA.

2. Application of § 1692e to Letter from RJM

For the foregoing reasons, I would hold that RJM's June 14 letter to Guerrero's attorney is covered by § 1692e. However, I would not apply the least sophisticated debtor standard to determine whether RJM's representations to Guerrero's attorney were false, deceptive, or misleading. Rather, following the Tenth Circuit's decision in *Dikeman*, I would hold that the standard of what constitutes a "false, deceptive, or misleading representation" has a different application depending on whether the communication is directed to the attorney or the consumer.

In *Dikeman,* a debt collector attempting to collect a debt contacted the attorney representing two debtors. When the debt collector provided verification of the debt to the debtors' attorney, it did not state that it was attempting to collect a debt and that any information obtained would be used for that purpose. The debtors sued the debt collector, alleging that the omission of such a statement violated § 1692e(11) which (as it then read) required that a debt collector "disclose clearly in all communications made to collect a debt . . . that the debt

collector is attempting to collect a debt and that any information obtained will be used for that purpose." *Dikeman*, 81 F.3d at 951 (quoting 15 U.S.C. § 1692e(11) [1995]).

The Tenth Circuit held that the failure to provide such a statement, in a communication to an attorney, did not violate § 1692e. In the court's view, "the fact of the debt verification and its content, viewed in context, was adequate to disclose to an attorney hired to represent the debtor that the debt collector was attempting to collect a debt and that any information obtained would be used for that purpose." *Id.* at 954. The court explained:

> The legal implications of communicating with a debt collector would be especially within the professional competence of a lawyer hired to represent a client's interests in the collection process, and the fact that a communication is made to collect a debt is something that the lawyer's professional expertise would allow him or her to discern easily on facts such as these.

*Id.* at 953.

I agree with the approach taken in *Dikeman*. It makes sense to read the statute in a practical way, asking not whether the communication is false, deceptive, or misleading in the abstract, but whether it is so to the person to whom it is addressed. A communication that is false, deceptive, or misleading to a consumer may not be so to an attorney. Such an approach both protects debtors and remains true to the statutory text.

The passage in RJM's June 14 letter to which Guerrero objects is the sentence stating that RJM "is not a collection agency and therefore, not subject to the Fair Debt Collection Practices Act." RJM's statement that it is not a "collection agency" is, in one sense, true. As the district court found,

RJM is "neither licensed nor registered as a collection agency in the State of Hawaii." But RJM's legal conclusion that it was "therefore" not a debt collector covered by the FDCPA hardly follows.

If RJM's statement had been made to Guerrero, I would have no hesitation in concluding that it was "false, deceptive, or misleading" within the meaning of § 1692e. But the statement was made to Guerrero's attorney rather than to him. Given that RJM's statement was made to a debtor's attorney, specifically hired because of his professional expertise in debt collection matters, I would hold that the statement — as made to the attorney — was not "false, deceptive, or misleading." It was not a statement that might have taken the attorney time and money to evaluate and contest. Rather, it was a legal contention that the attorney was able to evaluate and reject quickly and easily. I would therefore hold that while RJM's communication to Guerrero's attorney was covered under § 1692e, it did not violate that section.

## B.    Obligation to Verify Debt under § 1692g

Section 1692g(a)(4) provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall" give the consumer "written notice containing"

> a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector[.]

Section 1692g(b) further requires

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection

(a) of this section that the debt, or any portion thereof, is disputed . . . *the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector.* Collection activities and communications that do not otherwise violate this subchapter [Subchapter V. Debt Collection Practices] may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed . . . .

(Emphasis added.)

After receiving RJM's two initial letters, Guerrero asked for verification of the asserted debt in his attorney's June 10 letter, in accordance with § 1692g(b). RJM responded in its June 14 letter to Guerrero's counsel, "We are in the process of complying with your request to verify the above referenced account. Same will be sent to you upon receipt." RJM also wrote, "the current balance is $1,291.86. Please contact this office to discuss this matter. We have enclosed a **postage paid return envelope** for your convenience." (Emphasis in original.) Finally, at the bottom of the letter, RJM wrote, "This is an attempt to collect a debt. Any information obtained will be used for that purpose."

Guerrero contends that RJM had not verified the debt when it wrote the June 14 letter, and that RJM was therefore obliged under § 1692g(b) to "cease collection of the debt." He contends further that the June 14 letter was "collection of the debt" within the meaning of § 1692g(b). The district court agreed with Guerrero, but the majority reverses. According to the majority, a settlement attempt is not "collection of [a] debt" within the meaning of § 1692g(b) if the debtor is repre-

sented by an attorney. However, according to the majority, a settlement attempt *is* "collection of [a] debt" if the debtor is not represented.

I am somewhat sympathetic to the general policy concerns expressed by the majority, and, indeed, am very sympathetic to its concerns as they relate to the facts of this case. As a general matter, there may be some sense in allowing two attorneys — one representing the debt collector and the other representing the debtor — to enter into settlement negotiations while a debt is still being verified. In this particular case, it is hard to like the aggressive stance and tactics of Guerrero's lawyer and hard to see the harm caused by RJM's June 14 letter.

But policy concerns are not the same thing as statutory language. The plain meaning of § 1692g is that any "collection of the debt," whether direct or indirect, is prohibited until the debt has been verified. When a debt collector receives a request under § 1692g(a) to verify a debt, it has two choices. It may decide not to verify the debt and to abandon any attempt to collect the debt. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) (debt collector gave up all attempts to contact debtor and actually returned debtor's file to original creditor). Or it may decide to verify the debt in order to pursue collection activities. But if it decides to verify the debt, it must cease collection activity during the verification process and resume collection activity only after the debt has been verified. 15 U.S.C. § 1692g(b).

The majority refuses to read the statute as it is written. According to the majority, indirect collection activity aimed at a debtor's attorney is permitted under § 1692g(b) while a debt is being verified. Its opinion states that upon receipt of Guerrero's request for verification, RJM "ceased all *direct* collection activity from Guerrero." Maj. Op. at 10335 (emphasis added). The statute does not make such a distinction. The majority does not deny that RJM engaged in "col-

lection activity" in sending its June 14 letter to Guerrero's attorney, but it approves such activity because it is indirect and aimed at the attorney rather than the debtor. But there is nothing in the text of § 1692g(b) that prohibits "direct" collection but permits "indirect" collection. Nor is there anything in the text that permits sending a "collection" letter to a debtor's attorney, even while forbidding sending an equivalent "collection" letter directly to an unrepresented debtor.

Although I can see policy reasons for writing the statute differently, I would follow the statute as it is written. The fact that the statute is written clearly is reason enough to follow it. In addition, the Supreme Court in *Heintz*, surveying the legislative history of the statute, observed that Congress had considered and rejected alternative language that would have immunized from FDCPA liability a debt collector's lawyer's attempts " 'to contact third parties in order to facilitate settlements.' " 514 U.S. at 297 (quoting H.R. Rep. No. 99-405, at 11 (1985), *as reprinted in* 1986 U.S.C.C.A.N. 1752, 1760). The Court explained that Congress had declined to draw a line in the FDCPA "between 'legal' activities and 'debt collection' activities." *Id.*

Finally, there are good policy reasons supporting the statute as written. There is nothing particularly onerous about requiring a debt collector to cease debt collection activities — including attempts at settlement with the debtor's attorney — until the debt is verified. The standard for verification is not very demanding. *See, e.g., Clark*, 460 F.3d at 1173-74; *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). In most cases, the waiting period will not be long. In those cases where the waiting period is extended because the debt is difficult to verify, that very difficulty is a reason to wait. Requiring all collection efforts, including settlement offers, to cease prior to verification helps to ensure that both parties have accurate information about the claim being settled. *See* S. Rep. No. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699 (verification is intended to "elimi-

nate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid"); *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 496 (5th Cir. 2004) (public interest in settlement does not trump FDCPA provisions).

Section 1692g(b) provides a simple bright-line rule: All "collection of the debt" must cease pending verification of the debt. Full stop. There are sound policy reasons for having such a bright-line rule. There is no necessity to distinguish between cases in which the debtor is, or is not, represented by counsel. There is no necessity to distinguish between bona fide settlement negotiations and harassment, hardball tactics, or threats of injury designed to coerce settlement. If verification has been requested, all collection activity must cease pending verification. The rule is easy to understand and easy to follow.

In this case, it is undisputed that Guerrero properly requested verification of the debt under § 1692g(a). In response, RJM sent a letter on June 14 in which it stated that it was in the process of obtaining verification, thus making clear that as of the date of the letter, the obligation to cease collection activities applied. In that same letter, RJM stated that the "current balance" of the account was $1,291.86, the same amount given in its two initial dunning letters to Guerrero; it stated that it was enclosing "a **postage paid return envelope** for your convenience"; and it stated, "This is an attempt to collect a debt." RJM's letter could hardly have been clearer. It was trying to collect the asserted debt. One can characterize the letter as an attempt to settle the debt, even though that is not what the letter says. But that does not matter. Section 1692g(b) makes no exception for attempts at "settlement," and it forbids "collection of the debt, or any disputed portion thereof" pending verification.

I would therefore hold that in sending its June 14 letter to Guerrero, RJM violated § 1692g(b).

### III.  Attorney's Fees

Section § 1692k(a) provides that "any debt collector who fails to comply with any provision" shall pay the debtor "any actual damage sustained," "such additional damages as the court may allow, but not exceeding $1,000," and, "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." The district court here concluded, "On the basis of the above findings, and particularly the findings with respect to Defendant's false and misleading representations, . . . Plaintiff is entitled to statutory damages of $1,000.00 for the FDCPA violations." No other damages were awarded to Guerrero. Based on Guerrero's success in winning statutory damages, the district court also awarded him $43,428.00 in attorney's fees and $1,809.21 in costs.

I concur in that portion of the majority's opinion holding that the two otherwise identical letters that RJM sent to Guerrero's home and post office box addresses were not false, deceptive, or misleading simply because the account and file numbers listed on one letter ended with an "a" and those on the other letter with a "b." In my view, even the least sophisticated debtor would realize that these letters referred only to a single account due. I also agree with the majority, although based on a different rationale, that RJM's June 14 communication to Guerrero's attorney did not violate § 1692e. In contrast to the majority, I would uphold the district court's ruling that RJM failed to cease collection activity pending verification as required by § 1692g(b).

Because I would hold that Guerrero prevailed on his claim that RJM violated § 1692g(b), I would also hold that he is eligible for statutory damages, attorney's fees, and costs under § 1692k(a). However, I would vacate the district court's existing award of statutory damages, attorney's fees, and costs and remand for reconsideration consistent with the degree of success Guerrero ultimately achieved. *See, e.g., Zagorski v. Mid-*

*west Billing Servs., Inc.*, 128 F.3d 1164, 1166-67 (7th Cir. 1997) (per curiam); *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 630 (4th Cir. 1995).

## Conclusion

Based upon the plain language of the FDCPA, the case law interpreting the statute, and Congress's underlying policy, I would hold that communications or collection activities directed at a debtor's attorney are actionable under §§ 1692e and 1692g. On the facts of this case, I would reverse the district court's holding that RJM violated § 1692e but affirm its holding that RJM violated § 1692g(b).